George T. ARATANI et al., Plaintiffs,

v.

Robert F. KENNEDY, Attorney General of the United States, Defendant.

Kyuichi SUMIYOSHI et al., Plaintiffs,

v.

Robert F. KENNEDY, Attorney General of the United States, Defendant.

Kinzuchi SHIGENO et al., Plaintiffs,

v.

Robert F. KENNEDY, Attorney General of the United States, Defendant.

Kunio ABE et al., Plaintiffs,

v.

Robert F. KENNEDY, Attorney General of the United States, Defendant.

Civ. A. Nos. 3164–58, 3228–58, 1176–59, 2529–61.

United States District Court District of Columbia.

March 18, 1964.

Thomas H. Carolan, Esq. and Philip W. Amram, Washington, D. C., for plaintiffs in the Aratani, Shigeno and Abe cases.

Roger E. Brooks, James P. Parker, Washington, D. C., for plaintiffs in the Sumiyoshi case.

Armand DuBois, Dept. of Justice, Washington, D. C., for defendant.

LEONARD P. WALSH, District Judge.

This matter came before the Court on March 11, 1964, on a petition for compromise of class actions under Rule 23(c) of the Federal Rules of Civil Procedure, and on a motion for approval of counsel fees as provided by Section 20 of the Trading with the Enemy Act, 50 U.S.C. App. § 20.

I

These cases concern claims by depositors who had exchanged dollars for yen certificates with American branches or the Sumitoma Bank, Ltd. and the Yokohama Specie Bank, Ltd. These were branches of Japanese banks and were located in California, Washington, and Honolulu. The transactions took place prior to December 7, 1941. Upon commencement of hostilities, the United States seized the American Branches, and the banks did not open for business thereafter. After the war, several thousand claimants sought redemption of their yen certificates through the Office of Alien Property.

Claims were duly filed and processed, and after a series of hearings in 1955 and 1956, the Hearing Examiner allowed the claims at the yen-dollar exchange rate of 23.4 cents, the pre-war dollar value of the yen. The Director of the Office of Alien Property reversed this finding and held that the post-war rate of 361.55 yen for one dollar was the rate of exchange to be used.

The decision of the Director was upheld by this Court and summary judgment was granted for the Government in Aratani, et al. v. Kennedy, Civil Action No. 3164–58. The decision was affirmed by the United States Court of Appeals for the District of Columbia Circuit, reported in 317 F.2d 161. The Supreme Court granted certiorari on October 21, 1963. However, prior to the submission of the case, counsel for the parties entered into discussions in an effort to settle the case. A tentative compromise agreement was achieved, and the Supreme Court referred the case to this court for the approval of a compromise settlement.

The proposed compromise concerns four cases, all of which are in dispute over the rate of exchange. These are class actions, involving 2,963 claimants, and, as such, cannot be dismissed or compromised without approval of the court pursuant to Rule 23(c) of the Federal Rules of Civil Procedure.

These claims, if paid at the pre-war exchange rate of 23.4 cents would result in total payments of $15,433,795.41, or $4,909.307.42 to the Sumitomo group and $10,524,487.99 to the Yokohama Specie group. If paid at the post-war rate of

361.55 yen per dollar, the total amount would be $168,587.46, or $54,547.86 to the Sumitomo group and $114,039.60 to the Yokohama Specie group.

The assets of the Sumitomo Bank now in the possession of the Office of Alien Property total $1,213,808.44. This represents the total amount which can be paid to these claimants, regardless of the rate of exchange to be used.

The proposed compromise would pay a total of $6,395,357.56, less counsel fees. This includes the full amount in the Sumitomo bank of $1,213,808.44, and $5,-181,549.12 to the Yokohama claimants.

The $1,213,808.44, less counsel fees, which is to be paid to the Sumitomo claimants, represents 100 per cent of the amount which can be paid as it is the total amount of the fund. This amount is 25 per cent of the maximum amount claimed under the pre-war exchange rate of 23.4 cents per yen. However, under the proposed settlement each claimant will receive approximately 43 times the amount which was finally allowed by the Office of Alien Property.

The $5,181,549.12, less counsel fees, which is to be paid to the Yokohama Specie Claimants represents 49 per cent of the amount claimed as the maximum under the pre-war exchange rate. This amount is approximately 85 times the amount allowed by the Office of Alien Property.

Counsel for the claimants urge several reasons for approval of the proposed compromise. Among the reasons which are persuasive is the assertion that the total amount to be paid, after deduction of attorneys' fees, represents more dollars than were originally paid by the depositors; the pre-war exchange rate represents 85 times the amount allowed by the Office of Alien Property, and 83 times the amount of the post-war rate. Counsel further assert that the original deposits represented the life savings of many of the ·claimants, who are now retired, and this amount is a greater asset to them at the present time than an even larger amount at a later date if the results of the litigation were favorable. Counsel also cite the protracted history of this litigation, encompassing more than 17 years, and the 22 years since the assets were seized by the Government.

Counsel for the Government urge that this proposed fifty-fifty settlement is fair and reasonable in the light of the present chances of ultimate victory or defeat. Counsel stated that had certiorari not been withdrawn, that the Government would have urged that the Supreme Court adopt the Director's decision, since there was no rate of exchange on December 8, 1941, and apply the first available rate on the authority of Sutherland v. Mayer, 271 U.S. 272, 46 S.Ct. 538, 70 L.Ed. 943 (1926).

The Government then suggests that a second alternative for the Supreme Court would have been the pre-war rate which was in effect on August 26, 1941, the nearest rate to the breach date.

And finally, the third alternative posed is that a triangular rate be used. For example, on December 8, 1941, there was a rate between Swiss francs and Japanese yen in Switzerland; and there was a rate for United States dollars and Swiss francs. Thus, a triangular rate would have achieved a theoretical exchange for yen-dollars in Switzerland on the breach date.

The duty of this Court is well stated in Winkleman, et al. v. General Motors Corp., et al., (S.D., N.Y., 1942), 48 F. Supp. 490, 493:

"The role of the Court of the compromise of a stockholder's derivative action is described by Mr. Justice Rosenman in Newberger, &c. v. Barrett, et al., (not published), June 25, 1942. He wrote:

"The role of the court is to see that the compromise is fair and reasonable under the circumstances and that no collusion or fraud has been practiced in the consummation of the settlement. To do this the court must weigh the probabilities and possibilities of victory or defeat as indicated by the legal or factual

situation presented. If such considerations lead to the conclusion that the settlement agreed upon by the plaintiffs in the suit is not unfair or unreasonable to the corporation (in which all the other stockholders have their interest), then the action of the plaintiffs in compromising the suit should be approved.' "

■ This Court has reviewed this matter at length and concludes that the proposed settlement is fair and reasonable to the claimants, on the basis of the actual amounts to be received, and on the basis of the possibilities of successful termination of the litigation.

## II

■ Counsel have petitioned this Court to approve fees in the amount of 20 per cent of the total settlement. Counsel fees would total $1,279,071.51, or $1,036,309.82 from the Yokohama funds and $242,761.69 from the Sumitoma funds.

Section 20 of the Trading with the Enemy Act (50 U.S.C.App. § 20, as amended), provides for counsel fees of 10 per cent of such payment. However, the section further provides for a higher fee in the following manner:

" * * * The court hearing such petition, or a court awarding any judgment in respect of any such property or interest or proceeds, as the case may be, shall approve an aggregate of fees in excess of 10 per centum of the value of such property or interest or proceeds *only upon a finding that there exist special circumstances of unusual hardship* which require the payment of such excess. * * * " (our emphasis)

Counsel for the Government in approving the proposed compromise have agreed that they would offer no objection to an aggregate of fees not in excess of 20 per cent.

This litigation has required the services of 33 attorneys, who have devoted varying amounts of time over the past seventeen years. The six principal attorneys have set forth detailed affidavits to substantiate their petition for an aggregate of fees of 20 per cent.

Mr. Thomas W. Carolan estimates he has averaged 15 hours a week during the past seventeen years. He further states that he has written in excess of 30,000 letters, 17,000 of which were dictated. He estimates his total expenditures, not including office overhead, at $66,894.92.

In addition to the litigation over the years, Mr. Carolan also devoted numerous hours to legislative hearings. Prior to 1953, when the Office of Alien Property was delaying the hearing on the subject claims, various bills were introduced in Congress which would have eliminated the debt claims. The bills had the active support of the Office of Alien Property.

One bill passed the Senate in spite of the opposition by Mr. Carolan. It failed to come before the House. Subsequent bills were introduced into both Houses and counsel devoted many hours to opposing them and testified before legislative committees on various occasions.

Mr. Philip W. Amram has been counsel since 1958. He estimates that his overhead costs, including the services of his partners and associates, to be between $30,000 and $40,000.

Mr. Roger E. Brooks estimates that he has devoted 446 hours to this litigation since 1958. Mr. James P. Parker estimates that he has devoted 120 hours. The sum total of estimated time by Messrs. Brooks, Parker and Kashiwa is 1330 hours. For these services they may expect to divide a maximum fee of $42,700.

Finally, Mr. Alfred Gitelson of California estimates that his services occupied in excess of 7,500 lawyer's work hours, and he estimates that his staff expenses were not less than $50,000.00.

It is the opinion of this Court that counsel have clearly substantiated their petition for an aggregate of fees in the amount of 20 per cent of the total payment. Not only is this amount justified by the estimated hours expended, but the compromise is clearly a successful termination for the claimants and the

diligence demonstrated by counsel is in keeping with the highest traditions of the legal profession.

### III

This Court will issue an interlocutory order approving the compromise settlement and awarding counsel fees in the amount of 20 per cent, subject to a final hearing prior to which the claimants will be afforded opportunity to object to the settlement and the counsel fees.

This Order will direct counsel for plaintiffs to give notice of the Order to all claimants, informing them that a final hearing will be held on Monday, April 27, 1964, at which time they may appear personally or by counsel if they wish to oppose the compromise or the award of attorneys' fees, or to submit objections in writing to this Court before the hearing date.