Ayako **HONDA** et al., Plaintiffs,

v.

Ramsey **CLARK**, Attorney General of the
United States, Defendant.

Civ. A. No. 1179–64.

United States District Court
District of Columbia.

Oct. 25, 1967.

Thomas H. Carolan, pro se.

Philip W. Amram, pro se.

Gilbert Hahn, Jr., Bardyl Rifat Tirana, Washington, D. C., for Carolan and Amram.

Irving Jaffe, Bartlett S. Atwood, Dept. of Justice, for defendant.

## MEMORANDUM

WILLIAM B. JONES, District Judge.

Petitioners Thomas H. Carolan and Philip W. Amram have applied to the Court to award them fair compensation equal to the fair value of the services which they claim that they, as members of the bar of this Court, rendered to plaintiffs and similarly situated persons. They seek to have this award made out of a fund resulting from the vesting in the Alien Property Custodian in 1943 of the assets of the Yokohama Specie Bank, Ltd. They do not ask for any part of that fund which will be necessary to pay the plaintiffs and others similarly situated under the consent judgment entered herein on July 6, 1967, which sum is estimated to be $10,500,000. They seek to be paid out of the residue of the vested assets.[1]

---

1. This application for attorneys' fees is as set forth in petitioners' Amended Petition for Award of Counsel Fees.

To understand the significance of petitioners' request it is necessary to review briefly this litigation and Abe v. Kennedy, Civil Action No. 2529–61, United States District Court for the District of Columbia, 228 F.Supp. 706.[2] In both actions the named plaintiffs sued on their own behalf and on behalf of all persons similarly situated. The class plaintiffs in each case were several thousand Americans of Japanese ancestry who prior to December 7, 1941 had deposited dollars in California and Washington branches of the Yokohama Specie Bank, Ltd., a Japanese bank. Following the outbreak of war with Japan the American assets of that bank were vested in the Alien Property Custodian[3] pursuant to the Trading with the Enemy Act, 50 U.S.C.App. § 1, et seq. In 1946 Congress enacted § 34 of that Act (50 U.S.C.App. § 34) which provided that vested property, or the net proceeds thereof, were to be equitably applied by the Alien Property Custodian to the payment of debts owed by the person who owned such property immediately prior to its vesting in the Custodian. The depositors with the Yokohama Bank were creditors to the extent of their deposits and beginning in 1947 some 7500 claims based on yen deposits were timely filed.

After extensive hearings before an examiner, the Alien Property Custodian in 1957 ruled that the claims were allowable at the rate of 361.55 yen to the dollar. The 7500 claimants were advised of this ruling and were directed to submit within forty-five days their original yen certificates which had been issued by the Bank or, in the event of loss of the certificates, other proofs of the debt owed. The claimants were also advised that if such certificates or other proofs were not submitted within the forty-five days the claims would be dismissed as having been abandoned. The same communication further stated to the 7500 claimants that a schedule of claimants would be drawn up from the names of the persons submitting their certificates or other proofs and that within sixty days after the issuance of the schedule any aggrieved claimant could file in this Court a complaint for review of the schedule in which action the Attorney General would be the defendant.

1817 claimants submitted, within the prescribed time, original certificates of deposit or other proof. The 4100 claimants who are the plaintiffs in this *Honda* case, did not submit their certificates or other proofs and they were informed that their claims were denied as abandoned. In 1961 a final schedule was prepared and sent to all claimants, including these 4100 who were not included in the schedule but who were advised that they could within sixty days file a complaint in this Court for a review of the schedule.

In August 1961, Abe v. Kennedy, C.A. 2529–61 was instituted in this Court on behalf of the 1817[4] claimants whose claims had been allowed at the rate of

---

2. Upon succeeding Robert F. Kennedy as Attorney General, Nicholas deB. Katzenbach was substituted as party defendant.

   For a more detailed factual statement of the *Honda* case and the *Abe* case see: Honda v. Clark, 386 U.S. 484, 87 S.Ct. 1188, 18 L.Ed.2d 244 (1967); Kondo v. Katzenbach, 123 U.S.App.D.C. 12, 356 F.2d 351 (1966); Aratani v. Kennedy, 115 U.S.App.D.C. 97, 317 F.2d 161, modified 323 F.2d 427 (1963); 228 F.Supp. 706 (D.C.1964).

3. By Executive Order No. 9788, the Attorney General in 1946 succeeded to the powers and duties of the Alien Property Cus-

todian. Those powers and duties are exercised and performed through the Office of Alien Property, Department of Justice, in charge of which is a Director. For convenience the terms Alien Property Custodian or Custodian will be used to mean one or all such officers or office.

4. While not material, it is noted that petitioners' petition and amended petition refer to 1799 claimants as being plaintiffs in the *Abe* action, while petitioner Carolan's memorandum attached to the petition and by reference to the amended petition states that the *Abe* class action was brought on behalf of 1817 persons.

361.55 yen to the dollar. In the *Abe* case the plaintiffs claimed that the deposit debts owed them should be paid in dollars at the rate of 23.4 cents for each yen rather than at the rate of 361.55 yen per dollar allowed by the Custodian. A case filed in 1958 by depositors of the Sumitomo Bank raised the same issue. Proceedings in the *Abe* action were postponed pending the outcome of the earlier case, Aratani v. Kennedy, C.A. 3164–58. In that case this Court granted summary judgment in favor of the defendant. On appeal that judgment was affirmed. 115 U.S.App.D.C. 97, 317 F.2d 161, modified 323 F.2d 427 (1963). After the Supreme Court granted certiorari in *Aratani,* the Attorney General entered into a compromise settlement with the plaintiffs in both *Aratani* and *Abe.* Judge Walsh of this Court on March 17, 1964 entered an interlocutory order approving the compromise and on May 18, 1964 entered a final order. Petitioners Carolan and Amram represented both the *Aratani* and *Abe* plaintiffs. As a part of the compromise settlement they were awarded as attorneys fees for themselves and other counsel associated with them $1,279,071.-51 from the Yokohama funds and $242,-761.99 from the Sumitomo funds, which sums constituted 20% of the consent judgments entered in *Abe* and *Aratani.* Over $11,000,000 remains in the Yokohama fund after payment of the compromise judgment and attorneys' fees in *Abe.*

On May 19, 1964, this *Honda* action was brought on behalf of the 4100 Yokohama Bank depositors, whose claims were denied as abandoned by the Custodian in 1961.[5] The plaintiffs sought a declaratory judgment that defendant's dismissal of their claims as abandoned was illegal and that they be paid at the same conversion rate as the plaintiffs in Abe v. Kennedy. Defendant, after answering the complaint, moved to dismiss on the ground that the Court lacked jurisdiction over the subject matter of the action because it was not commenced within sixty days after the Custodian's schedule was mailed to the plaintiffs in August 1961 as required by 50 U.S.C.App. § 34(f). This Court granted that motion and the dismissal was affirmed by the Court of Appeals. 123 U.S.App.D.C. 12, 356 F.2d 351 (1966). The Supreme Court reversed, holding that the statutory scheme of § 34 of the Trading with the Enemy Act required tolling the limitation period during the pendency of the *Abe* litigation. 386 U.S. 484, 500, 502, 87 S.Ct. 1188, 18 L.Ed.2d 244 (1967).

Following the reversal by the Supreme Court a consent judgment was entered in this case on July 6, 1967, upon the joint motion of the plaintiffs and defendant. That judgment and decree provided for payment of the claim at the conversion rate of 0.26133 cents per yen. It also awarded attorneys' fees in the amount of $950,000.00 to plaintiffs' counsel. Petitioners here did not represent the plaintiffs in the *Honda* litigation and, of course, will receive no part of the $950,000.00 fees. As awarded to counsel of record in this case, the fee will be less than 10% of the amount recovered for plaintiffs, according to the best estimate of counsel for defendant as well as plaintiffs' counsel.

Petitioners by their amended petition for an award of a fee to counsel state that they do not object to the $950,-000.00 fee awarded to counsel of record in this case. But they assert that they are also entitled to payment of fair and reasonable compensation "because of the use of their services in the *Abe* litigation for the benefit of the *Honda* and other depositors in overcoming the bar of the statute of limitations and in fixing the amount of recovery on the merits from the vested Bank funds." They contend that since the $950,000.00 awarded to *Honda* coun-

5. When commenced this action was entitled Honda v. Kennedy. Thereafter Nicholas deB. Katzenbach succeeded Robert F. Kennedy as Attorney General and defendant following which Ramsey Clark succeeded Nicholas deB. Katzenbach as Attorney General and defendant herein.

sel of record is less than 10% of the recovery, "there is ample room for the payment of fair compensation to petitioners without going beyond the *Abe* fee formula." (The *Abe* fee was 20% of the consent judgment recovery. Aratani v. Kennedy, 228 F.Supp. 706, 709–710 (D.C. 1964)). Petitioners would have a fee paid to them "solely out of the residue of the vested assets, in the hands of defendant, which will not be needed to make full payment, at the rate of $0.26133 per yen, to those holders of yen certificates of deposit who appear and authenticate their claims prior to the cut-off date" as provided in the consent judgment or by any subsequent order of this Court.

As noted the first ground for petitioners' claim of right to a fee is that their services in the *Abe* litigation were used in overcoming the bar of the statute of limitations by *Honda*. They point to the Supreme Court decision and opinion in this case. There the Court said "we hold that the statutory scheme [§ 34] itself requires tolling the limitation period during the pending of the *Abe* litigation." 386 U.S. at 500, 87 S.Ct. at 1197. The Supreme Court stated that the model for § 34 of the Trading with the Enemy Act was the Federal Bankruptcy Act and that under the latter a creditor who failed to file a timely claim did not lose all rights; rather such an untimely claim could be paid out of the surplus, if any, remaining in the bankrupt's estate after all timely filed claims had been paid in full. This, of course, could result in the untimely claimant receiving nothing if there were no remaining surplus or in an amount less than that claimed if the remaining surplus was not sufficient to pay the untimely claims in full. Here it appears that the *Honda* claims can be paid in full at the consent judgment rate because the surplus Yokohama funds will be suffi-

cient to meet such demands. But such is not the case of Honda type claimants to the Sumitomo Bank vested assets. Those assets were exhausted by the *Aratani* plaintiffs, who like the *Abe* plaintiffs, filed their action within the sixty day limitation provided in § 34. Aratani v. Kennedy, 228 F.Supp. at 708. Honda type claimants to the Sumitomo assets can recover nothing on their claims.

Since petitioners were counsel of record for the plaintiffs in both the *Abe* and *Aratani* cases, it is difficult to understand how it can be said that their services in *Abe* were used by the *Honda* plaintiffs to toll the statute of limitations. They do not contend that the *Abe* case was instituted for that purpose. Indeed if they had the *Honda* plaintiffs in mind it would have been simple to have either stated a second claim in the *Abe* complaint or to have filed a separate action within the sixty day statutory period in which to assert the *Honda* claims.[6] And there is no showing that petitioners in August 1961, when they filed the *Abe* complaint, knew that the Yokohama fund would be in excess of the total amount claimed by the 1817 *Abe* plaintiffs' claims. Thus, even if petitioners were acting to toll the statute for *Honda* claimants by filing the *Abe* action, for all they knew the Honda claims would be as uncollectible as the claims of the similarly situated claimants to the Sumitomo fund.[7]

Petitioners' contention that their services were used to toll the statute of limitations on behalf of the *Honda* plaintiffs is without merit.

The second reason advanced by petitioners for awarding them a fee in this case is that through their services in the *Abe* litigation they benefited the *Honda*

---

**6.** Carolan and Amram on June 8, 1967, filed in this *Honda* action their appearance for 712 *Honda* plaintiffs. These are the claimants for whom Carolan has held powers of attorney for nearly 20 years.

**7.** There were 1144 *Aratani* plaintiffs asserting claims against the Sumitomo vest-

ed assets. But, as appears from the Carolan statement attached by reference to the amended petition for award of counsel fees, there were 1985 persons asserting claims as early as 1952 to those funds.

plaintiffs in fixing the rate of recovery from the vested Bank assets. They argue that it was only after the Supreme Court granted certiorari in *Aratani* that the defendant was willing to settle with the *Abe* plaintiffs. Petitioners point out that it was the *Abe* compromise conversion ratio that the qualified *Honda* class claimants will be paid.

In considering this contention of petitioners it is to be noted first that their services did not create a fund for anyone. The fund resulted from the proceeds of the Yokohama Specie Bank assets. It was the Congress, by enacting § 34 of the Trading with the Enemy Act in 1946, which recognized that certain creditors had a right to recover from the proceeds of such assets. It was that legislation which both established and has preserved the Yokohama Bank fund for all qualified creditors of that Bank.

Nor can it be said that petitioners have performed any services which in the strict sense resulted in a *stare decisis* holding. The *Aratani-Abe* plaintiffs did not obtain a court ruling that the prewar rate of exchange was to be applied in paying the claims of those qualified to receive payment. In an out of court agreement with defendant they compromised their claims. That compromise settlement was approved by Judge Walsh. It was a compromise that paid the *Abe* plaintiffs 49 per cent (less counsel fees) of the amount they claimed. The action of Judge Walsh was limited to concluding "that the proposed settlement is fair and reasonable to the claimants." Aratani v. Kennedy, 228 F.Supp. 706, 708, 709 (D.C. 1964).

But even if Judge Walsh's approval of the settlement in *Abe* were to be considered a *stare decisis* holding, it would avail petitioners nothing. It has been decided by our Court of Appeals that "[o]ne who is influential in litigation leading to the announcement of a rule of law does not thereby gain a right to compensation from all those who later benefit from the application of that rule."

Whittier v. Emmet, 108 U.S.App.D.C. 191, 199, 281 F.2d 24, 32 (1960), cert. denied 364 U.S. 935, 81 S.Ct. 380, 5 L.Ed. 2d 367. The most that can be said is that the *Honda* plaintiffs sought and obtained a consent judgment at an exchange rate that had been applied in the approved *Abe* consent judgment. Petitioners are not to be compensated for that.

An examination of the authorities cited by petitioners in their memoranda in support of their amended petition do not, under the circumstances of this case, give reason for altering the conclusion reached here.

But to hold that petitioners are not entitled to compensation in connection with this court action does not dispose of the matter of their application for counsel fees. While in the main petitioners in their amended petition for the payment of counsel fees, their memoranda in support thereof, and their oral argument claim a right to compensation here because of their services in the *Aratani-Abe* litigation, they also assert that their services, together with that of associates, during the administrative proceedings commencing in 1947 entitled them to a fee. In that connection the joint motion of plaintiffs and defendant herein for entry of consent judgment states (1) that defendant conceded before the Supreme Court in this case that the *Honda* plaintiffs' claims were valid and payable except for their delay of more than 60 days in the filing of this action and (2) that the brief of defendant in the Supreme Court was in essential agreement with plaintiffs' representation before that Court that "[T]here has never been any question about petitioners' [Honda plaintiffs] statutory eligibility for an Alien Property return, which the Government expressly recognized as long back as 1958 * * *."

Incorporated by reference in petitioners' amended petition for counsel fees are copies of two lengthy memoranda by Carolan and a copy of an affidavit of Alfred Gitelson, the originals of which

were submitted to Judge Walsh in Aratani v. Kennedy, 228 F.Supp. 706 (1964). Those memoranda and affidavit set forth in considerable detail the legal services Carolan, Gitelson and their associates performed in the administrative proceedings in the Office of Alien Property in connection with claims arising out of deposits made prior to December 1941 with the Yokohama Specie Bank, Ltd. It was in connection with those proceedings that the *Honda* class claims were recognized as being valid and payable.

Judge Walsh in awarding counsel fees in the *Aratani-Abe* litigation recognized that the administrative proceedings services of counsel were valuable. In his opinion he referred to 33 attorneys, only two of whom, petitioners here, were counsel of record in the *Aratani* and *Abe* cases. 228 F.Supp. at 709. In awarding counsel fees, Judge Walsh ordered that there be paid from the Yokohama Specie Bank, Ltd. account in the Office of Alien Property the sum of $1,036,309.82 to petitioners Carolan and Amram, who in turn were ordered to properly distribute that fee to all other counsel who had participated in the *Abe* cases and who had counsel fee claims pending. (Abe v. Kennedy, C.A. No. 2529–61, order of March 17, 1964.) Wirin and Okrand, two of counsel of record here, received $20,-000.00 of the fee awarded in the *Abe* case.[8] Those services were rendered in the administrative stage.

Just as Judge Walsh recognized that those administrative proceedings services were of value to the *Abe* claimants, so are they recognized to be of value to the *Honda* class of claimants. But in arriving at the 20% fee in the *Abe* case, Judge Walsh also considered the services rendered in the *Aratani-Abe* litigation. Here the litigation services of counsel Rauh, Silard, Wirin and Okrand have

been recognized and an award has been made to them of $950,000.00 for such services. Petitioners here would have a total of 20% of the *Honda* recovery awarded as counsel fees, of which they would get approximately 10%. But it has been held here that they are entitled to no fee here for services they rendered in the *Aratani-Abe* litigation. Thus, the 10% they seek here would be excessive, particularly since their services during the administrative stage would have returned nothing to the *Honda* claimants if other counsel had not instituted and prosecuted this case. A fee of 5% will be allowed for administrative proceedings service of counsel.

That 5% will be awarded as follows: First, only out of funds remaining in the Yokohama assets after the *Honda* plaintiffs' claims are paid at the rate of $0.26133 per yen and after the counsel fees in the sum of $950,000.00 have been paid to Rauh, Silard, Wirin and Okrand as awarded in the July 6, 1967 consent judgment entered herein.[9]

Second, the 5% fee will be paid to those counsel who participated in the administrative proceedings.

Third, in determining the actual amount awarded counsel there shall be excluded from the 5% computation the amounts recovered by *Honda* class claimants who have heretofore given powers of attorney to counsel or have otherwise retained or contracted for the legal services of counsel.[10]

Petitioners and counsel for defendant shall within 10 days submit in writing suggestions as to a method for identifying and notifying all counsel who participated in the administrative proceedings with respect to the Yokohama Specie

8. The other two counsel of record in this case, Rauh and Silard, did not participate in the administrative proceedings. Their first services were in connection with this court action.

9. In conditioning the 5% award to the residue funds there has been taken into

consideration petitioners' amended petition for counsel fees.

10. In petitioners' reply memorandum filed herein they expressly excluded from their amended petition for an award of compensation any fee in such cases.

Bank funds, as well as suggestions as to a method for determining the proportional amount of the fee to be distributed to each one of such counsel.

After petitioners filed a petition for award of counsel fees on June 30, 1967, they filed an amended petition on July 10, 1967. In ruling as I have above, I took into consideration both.

On July 24, 1967, petitioners filed a motion for leave to file a second amended petition for counsel fees. Attached to the motion is a draft of the proposed second amended petition. Neither the motion nor the proposed second amended petition add anything to what has been considered. The proposed amended petition for the most part is argumentative and repetitious argument. Such facts as it purports to allege have been before the Court through the files and the material appended to petitioners' original petition for award of counsel fees. Petitioners' motion for leave to file a second amended petition will be denied.