**Ayako HONDA et al.**

v.

**Ramsey CLARK, Attorney General of the United States.**

**Civ. A. No. 1179-64.**

United States District Court
District of Columbia.

April 30, 1968.

Joseph L. Rauh, Jr., John Silard, Washington, D. C., A. L. Wirin, Fred Okrand, Los Angeles, Cal., for plaintiffs.

Irving Jaffe, Bartlett S. Atwood, Dept. of Justice, Washington, D. C., for defendant.

Thomas H. Carolan, Washington, D. C., pro se.

Philip W. Amram, Washington, D. C., pro se.

Gilbert Hahn, Jr., Bardyl Rifat Tirana, Washington, D. C., for Carolan and Amram.

Henry Taketa, Sacramento, Cal., Herbert F. Layle, Birmingham, Mich., George P. Holt, Kashiwa & Kashiwa, Katsugo Miho, Honolulu, Hawaii, Kiguchi & Yasunaga, Los Angeles, Cal., Yoshitaro Murakami, Puunene, Maui, Hawaii, Tonako & Walders, Washington, D. C., Stuart H. Robeson, Washington, D. C., for objectors.

## OPINION

WILLIAM B. JONES, District Judge.

Following a reversal and remand by the Supreme Court, 386 U.S. 484, 87 S. Ct. 1188, 18 L.Ed.2d 244, a consent judgment and decree was entered herein on July 6, 1967. Its terms were made provisional and notice of those terms was given by the parties to all known claimants entitled to payment pursuant to the judgment by individual mailed notification to their last known addresses and by appropriate public notice. Those notices made known that the claimants had the right to be heard by motion or application, filed not later than December 1, 1967, opposing any provision of the judgment and decree prior to final promulgation. The Court has retained jurisdiction to modify, alter, or amend the terms of the judgment and decree pending promulgation of the final order herein.

Certain motions and other forms of opposition have been filed. Counsel for the plaintiffs and counsel for the defendant have filed written responses. One oral hearing has been held with respect to such opposition. The Court took under advisement the positions stated by the various parties.

## I

Petitioners, Yojuro Fujisue and Setsu Fujisue, object to the provisional consent judgment and decree charging that it disregards Hawaii bank liquidation laws. They represent a number of Hawaii residents who hold yen certificates of deposit procured from the Hawaii branch of Yokohama Specie Bank, Ltd., but who concededly did not file timely claims with the Office of Alien Property. Petitioners seek to intervene pursuant to Rule 24, Fed.R.Civ.P., and to be paid out of any surplus remaining after the *Honda* claimants and their counsel have been paid. Petitioners contend that they are so entitled to intervene and be paid because the order which vested the assets of the Hawaii branch of Yokohama Specie Bank with the Custodian was of the "right, title and interest" variety and because Hawaii law is applicable to distribution. Counsel for petitioners, in oral argument, further stated that if petitioners were not permitted to intervene in this proceeding, they would be precluded from obtaining relief in any other forum hereafter.

Whether Vesting Order 1501, 8 Fed. Reg. 10032, was of the "right, title and interest" variety or of the "res" type and whether Hawaii law is or will be at any future time applicable to distribution of any surplus remaining after *Honda* claimants and their counsel have been paid, as contended by petitioners, are questions which need not be decided at this time. This litigation is concerned only with the funds which will be distributed to *Honda* claimants and their counsel, not with any surplus which might survive the distribution, and Federal law is unquestionably applicable to this aspect.

In this connection, § 34(b) of the Trading with the Enemy Act, 50 U. S.C.App. § 34(b), provides in pertinent part as follows:

The Custodian shall fix a date or dates after which the filing of debt claims in respect of any or all debtors shall be barred * * * and shall give at least sixty days' notice thereof by publication in the Federal Register * * *.

Acting under the above section, the Alien Property Custodian fixed November 18, 1949[1] as the final date for filing debt claims with that office against the funds of the Yokohama Specie Bank, Ltd. 14 Fed.Reg. 5732. The language of this statute and the order issued pursuant thereto make it clear that no yen certificate holder is entitled to receive payment in this action unless he initially filed a claim with the Custodian prior to the cutoff date. Since petitioners herein failed to comply with this preliminary requirement, their application to intervene is necessarily untimely.

Even if the application of petitioners was timely filed, the reliance of counsel in oral argument on the case of Cascade Natural Gas Corp. v. El Paso Natural Gas Co., 386 U.S. 129, 87 S.Ct. 932, 17 L.Ed.2d 814 (1967), in support of petitioners' position is misplaced. In the case of Hobson v. Hansen, 44 F.R.D. 18 (D.C.D.C., 1968), Judge Wright had occasion to deal with the *Cascade* case. He said:

> Cascade should not be read as a carte blanche for intervention by anyone at anytime.
>
> \* \* \* \* \* \*
>
> [I]t is concerned with protecting an interest which practically speaking can only be protected through intervention in the current proceeding.
>
> \* \* \* \* \* \*
>
> [I]t does place squarely on the petitioners the obligation to demonstrate and specify a substantial interest which they can only protect through intervention. This the petitioners have not done.

Petitioners here have failed to make a showing that practically speaking their interests can only be protected through intervention in this proceeding. They are, after all, only seeking relief from any surplus remaining after the judgment in this case is satisfied.[2] For this reason and because of the untimeliness of the application, the petitioners' application to intervene will be denied and the objections to the provisional consent judgment and decree will be overruled.[3]

## II

The next group of objectors to be considered is represented by Kama Nakama and Sawano Okushima. This group objects to paragraph (3) of the provisional consent decree and judgment charging that that paragraph disregards Hawaii bank liquidation laws. This group, like the petitioners for intervention, procured their yen certificates of deposit from the Hawaii branch of the Yokohama Specie Bank, but, unlike the petitioners, they filed timely claims with the Office of Alien Property. Although the objectors are members of the *Honda* class, they are seeking relief in addition to that granted them in the consent judgment and decree as members of this class.

The objectors allege that their status is equivalent to that of a dollar depositor in the Yokohama Specie Bank, Hawaii branch, because they made deposits in United States dollars with that bank to obtain yen certificates, and because these certificates were redeemable in United States dollars at this bank at the request of the depositor. Carrying this argument one step further they allege that under the rule of Tagawa v. Trustee in Dissolution of the Sumitoma Bank of Hawaii, 43 Haw. 1 (1958), and Fuji-

1. The cutoff date was extended to November 30, 1949 in the provisional consent judgment and decree to protect certificate holders mailing their notice of claims from such distant places as Hawaii from being barred from payment.

2. Providing a surplus does remain after distribution is made to *Honda* claimants and their counsel, this Court expresses no opinion as to whether petitioners can obtain relief by drawing a parallel to the Bankruptcy Act and pressing their claims at the administrative level. See Honda v. Clark, 386 U.S. 484, 87 S.Ct. 1188, 18 L.Ed.2d 244.

3. On January 25, 1968 petitioners submitted to defendant a number of interrogatories under Rule 33, Fed.R.Civ.P. Since the application to intervene has been denied, the interrogatories accordingly will be quashed.

kawa v. Sunrise Soda Works, 158 F.2d 490 (9 Cir. 1946), Hawaii law is applicable and entitles them to 6% interest per annum from December 7, 1941 on their deposits out of any surplus surviving distribution to the remaining *Honda* claimants and their counsel.

While the objectors contend that dollar depositors are entitled to interest on their deposits under Hawaii law, this is a question which need not here be decided since the objectors are not dollar depositors with the Yokohama Specie Bank, Hawaii branch. In the case of In re Yokohama Specie Bank, Ltd., 86 Cal. App.2d 545, 195 P.2d 555 (1948), which involved the California offices of the Yokohama Specie Bank, the California Court dealt with a situation similar to the one confronting this Court. There the liquidator of the California offices petitioned for leave to make payment to claimants who were dollar depositors with that branch of the Bank. Subsequently, holders of yen certificates obtained from those offices of the Bank petitioned to intervene and receive identical treatment. In denying the application for intervention it was noted that, "[t]he yen certificates do not represent deposits in the California offices of the Bank and petitioners are not depositors in them."

■ The objectors here occupy no better position than the petitioners in the California case. Both groups "* * * were among the approximately 7500 depositors of the bank holding 'yen certificates' who submitted timely claims, * * * under § 34 of the Act seeking recovery of their deposits." [4] Honda v. Clark, 396 U.S. 484 at 486, 487, 87 S.Ct. 1188 at 1189, 18 L.Ed.2d 244. Since the sum of yen was submitted to the Head Office at Yokohama and there placed in deposit for the certificate holder, it is clear that the branch banks acted in these transactions as agents of the Head Office and the obligation was that of the Head Office, and not that of the branch bank from which the certificates were obtained. To this obligation Federal law is applicable. Accordingly the objections are overruled.

### III

The next group of objectors consists of claimants who either converted their yen certificates to an account in the Bank of Tokyo, Ltd. [5] or redeemed their certificates for cash with the Bank of Tokyo, Ltd. at the postwar (World War II) rate of exchange prior to November 13, 1957. This group objects to paragraph (4)(a) of the provisional consent judgment and decree which, because of the action taken by them prior to November 13, 1957, bars them from receiving payment thereunder.

While the claims of all certificate holders were being processed by the Office of Alien Property a question arose as to the redemption value of the certificates and Kunio Abe, Claim No. 55507, on behalf of all certificate holders, sought an administrative determination of this question. On November 13, 1957 the Custodian, who had plenary control over the decision, determined that the depositors would be paid at the postwar rate of 361.55 yen per dollar and the Attorney General refused to review the decision. The claimants were notified of this decision at the conclusion of the administrative process by letter and were instructed to submit their certificates

---

4. The following footnote appears in the above quoted passage:

 The certificates expressed their value in terms of yen, and bore the following statement, in both Japanese and English:

 "This is to certify that the sum of yen_____ has been submitted to our Head Office, Yokohama, to be placed in Fixed Deposit there in your name at _____ percent. per annum for ___ months, maturing _____, subject to the conditions on the back hereof.

 "Both principal and interest are payable, when due, at our aforesaid Head Office, Yokohama, upon surrender of this Certificate, properly endorsed and/or sealed."

5. The Bank of Tokyo, Ltd. became the successor in interest to the Yokohama Specie Bank, Ltd.

within 45 days. The claimants were further informed that payment would not be immediately forthcoming since a full schedule of claimants had to be made up and issued, after which aggrieved certificate holders could seek judicial review in this Court. However, the claimants were also advised that they could seek and receive immediate payment at the postwar rate from the Bank of Tokyo in Japan, and that if this course was chosen, each certificate holder's Notice of Claim should be cancelled by signing and mailing the enclosed Notice of Cancellation of Claim Card.

Those claimants, who submitted their certificates to the Custodian as required by him, appeared on the final schedule and eventually became members of the *Aratani* class or the *Abe* class [6] depending upon whether their certificates were procured from the Sumitomo or Yokohama Bank. Less than 1600 claimants did not submit their certificates but instead elected to seek redemption in Japan. The remainder of the claimants, who comprised the *Honda* class, neither submitted their certificates to the Custodian nor redeemed them with the Bank of Tokyo, Ltd.—that is they did nothing.

From an examination of these facts it becomes readily apparent that the action taken by claimants who sought redemption in Japan was precipitated and induced by the Custodian's decision of November 13, 1957. This fact is recognized by the Supreme Court for they stated that in view of the decision of the Custodian "[c]laimants would clearly be better off getting repayment immediately from the Japanese bank itself." Honda v. Clark, 386 U.S. 484 at 490, 87 S.Ct. 1188 at 1191.

Giving full consideration to these factors and endeavoring to reach an equitable result, it was concluded that those who sought redemption or conversion in Japan following the issuance of the November 13, 1957 decision of the Custodian should not be barred from recovery but should share in the distribution of the assets along with the *Honda* class, and paragraph (4)(a) was accordingly inserted in the provisional consent judgment and decree.

However, this line of reasoning does not apply to those who redeemed or converted their certificates prior to November 13, 1957. They can claim no prejudice or inducement at the hands of the Custodian. Prior to this date no authoritative source had stated whether the prewar or postwar rate of exchange would govern.

In this connection § 34(a) of the Act states in pertinent part as follows:

> Any property or interest vested in or transferred to the Alien Property Custodian * * *, or the net proceeds thereof, shall be equitably applied by the Custodian in accordance with the provisions of this section to the payment of debts owed by the person who owned such property or interest immediately prior to its vesting in or transfer to the Alien Property Custodian. No debt claim shall be allowed under this section if it was not due and owing at the time of such vesting or transfer, * * *. Any defense to the payment of such claims which would have been available to the debtor shall be available to the Custodian.

Ordinarily payment or creation of a new obligation with a new obligor discharges the obligation of the original obligor. Thus, payment by the Bank of Tokyo, Ltd., successor in interest to the Yokohama Specie Bank, Ltd., discharged the obligation of the Yokohama Bank, and said payment would be a good defense to demand for further payment made on the Yokohama Bank. Likewise conversion of the yen certificate on the Yokohama Bank to an account in the Bank of Tokyo created a new obligation undertaken by the Bank of Tokyo, discharging the Yokohama Bank and establishing a good defense to demand for further pay-

---

**6.** See for more particular description of the *Aratani* and *Abe* classes, Aratani v. Kennedy, 115 U.S.App.D.C. 97, 323 F.2d 427 (1963), and Aratani v. Kennedy, 228 F.Supp. 706 (D.C.D.C., 1964).

ment on the Yokohama Bank. Under § 34(a) of the Act any defense available to the debtor is also available to the Custodian. Since the objectors herein have all received payment or ostensibly entered into a new obligation, it would appear that § 34(a) is dispositive of the objections.

However, in view of certain considerations heretofore unknown to this Court and counsel for both plaintiffs and defendant but brought to light by a number of objections filed on behalf of individuals who converted their certificates to accounts in the Bank of Tokyo prior to November 13, 1957, it becomes necessary to create two subgroups and treat each separately. Subgroup "number one" will consist of those objectors who converted their yen certificates of deposit to an account with the Bank of Tokyo, Ltd. prior to November 13, 1957. Subgroup "number two" will consist of those objectors who redeemed their yen certificates of deposit for cash with the Bank of Tokyo, Ltd. prior to November 13, 1957.

Included among subgroup "number one" are Kenichi and Teruyo Nakamura. Mr. and Mrs. Nakamura hold a Bank of Tokyo certificate dated April 6, 1956. However, they allege that this certificate is merely a replacement for two certificates on the Yokohama Bank previously held in their individual names and that the replacement certificate was sought pursuant to the suggestion of the Bank of Tokyo since the original certificates had become frayed due to age. Finally, they allege that at no time did they intend to consent to a conversion with the attendant result of being entitled only to the postwar rate of exchange. Along the same line counsel for plaintiffs submitted a copy of a letter he sent to the defendant pursuant to a request for assistance from a similarly situated claimant and the response he received in return. In the defendant's re-

sponse the validity of the claim was recognized and it will be honored.

In this connection counsel for plaintiffs, in oral argument, represented to the Court that he is of the opinion that the portion of paragraph (4) (a) which reads, "converted to an account in the Bank of Tokyo, Ltd." is somewhat ambiguous. He further stated that he has always interpreted this language as meaning only a claimant who "knowingly and voluntarily" so converted would be barred from receiving payment thereunder.

Since distribution in this case is being dealt with on an equitable basis, it would appear that in the interest of fairness these claimants should not be foreclosed from sharing in the judgment if the conversion was not "knowingly and voluntarily" made.

Therefore, paragraph (4) (a) [7] of the provisional consent judgment and decree will be modified to read as follows:

(3) That the Attorney General shall not be required by this decree to make payment on any of the following:

(a) On any Yokohama Specie Bank, Ltd. yen certificate of deposit which on or before November 13, 1957 was redeemed for cash or voluntarily and knowingly converted to an account in the Bank of Tokyo, Ltd., or otherwise disposed of by any claimant or his successor in interest, provided, however, that a claimant or successor in interest who alleges involuntary and unknowing conversion shall have the burden of establishing such involuntary and unknowing conversion by a preponderance of the evidence.

With respect to any such eligible claimant who is not represented by other counsel, the class attorneys, Rauh, Silard, Wirin and Okrand, shall, upon request, provide representation without compensation in addition to

---

7. Since paragraph (2) of the provisional judgment and decree will be deleted from the final judgment and decree, for reasons not here material, paragraph 4(a) of the provisional judgment and decree will appear in modified form as paragraph 3(a) in the final judgment and decree.

that awarded counsel under order of March 5, 1968.

With respect to the issue of voluntariness and knowledge of conversion, the Court will retain jurisdiction to review any adverse decision made by the Attorney General or his delegatee. In the event that any claimant or his successor in interest establishes by a preponderance of the evidence that his yen certificate of deposit was involuntarily or unknowingly converted then he shall be paid at a conversion rate of 25.633 cents per yen.

█ Insofar as subgroup "number two" is concerned, the same considerations do not attach. These objectors obviously chose to redeem prior to November 13, 1957 for reasons peculiar to each claimant. However, whatever the reasons for so redeeming it would not be in violation of the interest of fairness to conclusively presume that they "knowingly and voluntarily" sought payment. Thus, § 34(a) is dispositive of this subgroup's objections and paragraph (4)(a) will remain a bar to their claim for payment. Accordingly the objections of those claimants who received cash payment on their certificates in Japan prior to November 13, 1957 will be overruled.

### IV

Under date of October 25, 1967 there was filed herein this Court's Memorandum which dealt with the claim of petitioners Carolan and Amram for counsel fees. 276 F.Supp. 154. The claim of those petitioners for fees for legal services in connection with this litigation was denied. However, it was recognized that legal services rendered during the administrative stage of the *Honda* class claims should be reimbursed. Petitioners and counsel for the defendant were directed to submit, within 10 days of the filing of the Memorandum, written suggestions as to a method for identifying and notifying all counsel who participated in the administrative proceedings with respect to the Yokohama Specie Bank funds, as well as suggestions as to a method for determining the amount of the fee to be distributed to each such counsel.

Such suggestions were not submitted. Instead defendant has filed objections to any award of fees to any counsel for services rendered in the administrative procedures.[8] Defendant asserts that there were no administrative proceedings so far as the *Honda* claimants were concerned; that the only such proceeding was with respect to Kunio Abe's contention that the claims should be paid at the prewar (World War II) yen-dollar rate of exchange rather than at the postwar rate. But in making such an argument the defendant overlooks other administrative steps required or made necessary by his predecessor, the Alien Property Custodian.

Attached to their petition for a fee were copies of statements of services rendered by petitioner Carolan. Those statements of services show that Carolan began in July 1947, in association with others, including Alfred Gitelson of Los Angeles, California, representing claimants to the Yokohama Specie Bank fund. This work entailed preparation and filing of a large number of claims, conferences with the Office of Alien Property Custodian concerning the requirements of that Office, obtaining an extension of the time for filing claims, and successfully opposing legislation introduced at the behest of the Department of Justice which, if enacted, would have eliminated all debt claims against Japanese Banks.

In the *Abe* case (228 F.Supp. 706) Carolan, Gitelson and other counsel who had represented claimants to the Yokohama Specie Bank fund filed statements of their services in the administrative stages. The extent of such services varied between the several counsel.

---

8. Of course defendant does not object to this Court's refusal to allow counsel fees in connection with the litigation stage to any one other than counsel of record, i. e. Messrs. Rauh, Silard, Wirin and Okrand. 276 F.Supp. 154 (1967).

Judge Walsh in the *Abe* case recognized that those services were valuable. In fact it was because of such services as well as the legal services in the litigation phase that he allowed counsel 20% of the total payment. In his order awarding attorneys' fees he provided that petitioners here, Carolan and Amram, should be paid the total fee awarded and that they should make proper distribution "to all other counsel who have participated in this case and who have claims for counsel fees pending."

As in the *Abe* case, so here the legal services of counsel who participated in the administrative proceedings should be compensated, even though they did not institute this action or participate in the litigation phase of this case. There would have been no litigation if claims had not been filed, the time extended for filing claims, the legislation defeated which otherwise would have eliminated the claims and other administrative steps taken.

Defendant's objections to the payment of such fees are overruled. In order to properly distribute the attorneys' fees hereinafter defined, the Office of Alien Property of the Department of Justice shall ascertain from its records and files the names and addresses of all counsel who have appeared for any claimants coming within the *Honda* class and it shall, by mailing to such counsel at their addresses of record, give notice of this ruling of the Court. Any counsel who desires to assert a claim for his services during the administrative stage of the *Honda* class claims shall file, on or before October 1, 1968, with the Clerk of this Court a petition asserting such claim. This Court will thereafter determine whether those claims will be referred to a Master for hearings, finding, conclusions and report to the Court.

The total amount that will be paid on such claims for such counsel services shall in no event exceed 5% of the total amount paid on the claims of those *Honda* class claimants who have not heretofore given powers of attorneys to counsel or have not otherwise retained or contracted for legal services of counsel. The fact that a counsel has a contractual right for payment by his client will not necessarily exclude him from further payment on a petition filed herein but the same will be taken into consideration as to whether he is entitled to be paid from the 5% fund a fee and the amount thereof.

Any counsel fees awarded shall only be paid out of funds remaining in the Yokohama Specie Bank vested assets after all the *Honda* class claims are paid, in accordance with the final consent judgment and decree and after counsel fees in the sum of $950,000.00 have been paid to Rauh, Silard, Wirin and Okrand as ordered to be paid in the March 5, 1968 order of this Court.