419 F.2d 324
 136 U.S.App.D.C. 22
 Ayako HONDA et al., Thomas H. Carolan
v.
John N. MITCHELL, Attorney General of the United States.
Ayako HONDA et al.
v.
John N. MITCHELL, Attorney General of the United States, Appellant.
 Nos. 22188, 22193.
 United States Court of Appeals District of Columbia Circuit.
 Argued April 23, 1969.
Decided Aug. 1, 1969.
 
 Mr. Philip W. Amram, Washington, D.C., with whom Messrs. Thomas H. Carolan and Bardyl R. Tirana, Washington, D.C., were on the brief, for appellants in No. 22,188 and appellees in No. 22,193. Mr. Bruce G. Sundlun, Washington, D.C., also entered an appearance for appellants in No. 22,188.
 Mr. Irving Jaffe, Atty., Dept. of Justice, with whom Messrs. Alan S. Rosenthal and John R. Franklin, Attys., Dept. of Justice, were on the brief, for appellee in No. 22,188 and appellant in No. 22, 193.
 Before McGOWAN, LEVENTHAL and ROBINSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 This appeal relates to the award of counsel fees for services rendered in connection with claims by depositors of the Yokohama Specie Bank. The assets of that bank were seized as alien property, and the primary dispute in the litigation underlying the present claim for legal fees involved the rights of the bank depositors, who held 'yen certificates,' to recover from the Alien Property Custodian.[1]
 
 
 2
 After the termination of a protracted administrative proceeding in which appellant Carolan and his associates represented all claimants, the Alien Property Custodian decided that the post-war yen conversion rate of 361.55 yen to the dollar governed recovery. The Government sent notice of the administrative determination to all claimants, with a request that each send in his yen certificates within 45 days in order to be eligible for compensation. Those depositors who turned in their yen certificates to the Custodian (the Abe-Aratani litigants) went to court in an attempt to increase their recovery by reversing the administrative determination and instead using the pre-war conversion rate of 4.3 yen per dollar. Appellants Carolan and Amram and their associates were counsel in this so-called Abe-Aratani litigation.[2] That litigation came to a happy conclusion because, after the Supreme Court had granted certiorari in the case, the Government settled 'approximately at the prewar rate without interest.'[3]
 
 
 3
 Shortly following the Abe-Aratani settlement, a second group of depositors those who had not turned in their yen certificates to the Custodian and therefore had not been parties to the Abe-Aratani litigation-- filed suit against the Custodian claiming that they also were entitled to recovery at the pre-war conversion rate. This became known as the Honda litigation. The Government defended on the ground that suit by the Honda claimants was barred because it had not been timely filed. The District Court accepted the Government's position, this court affirmed, Kondo v. Katzenbach, 123 U.S.App.D.C. 12, 356 F.2d 351 (1966), and the Supreme Court granted certiorari and reversed, 386 U.S. 484, 87 S.Ct. 1188, 18 L.Ed.2d 244 (1967). This Honda litigation was not conducted by appellants but instead by other counsel.
 
 
 4
 On remand, the Government and the Honda claimants entered a consent judgment and decree giving the Honda claimants recovery at the pre-war conversion rate. Appellants then filed a petition requesting that they be paid legal fees in the Honda litigation for services which they claimed to have rendered in respect of both the administrative proceedings and the Abe-Aratani litigation. By two memoranda and orders, 276 F.Supp. 154 (D.D.C.1967); (D.D.C.1968), the District Court decided that (1) appellants were not entitled in Honda to any compensation for legal services related to the Abe-Aratani litigation, and (2) appellants, as well as other lawyers who performed legal services during the administrative proceedings concerning the Yokohama Specie Bank, were entitled to compensation in Honda for those services. On the latter score, the District Court outlined a method for determining what amount the compensation for administrative-stage legal services should be, and how it should be divided among the lawyers who participated.[4]
 
 
 5
 On this appeal, the Government argues that the trial court should have awarded appellants nothing, while the appellants claim they should have been given more. Thus, the Government agrees with the trial court that appellants deserved nothing in the Honda litigation for services rendered in the Abe-Aratani litigation, but it contends as well that appellants did not deserve a fee for the services rendered during the administrative proceedings before the Custodian. Appellants, on the other hand, warmly embrace the trial judge's conclusion regarding their right to compensation for the administrative proceedings, but vigorously contest his refusal in Honda to compensate them for their work in the Abe-Aratani litigation in which none of the Honda claimants were parties.
 
 
 6
 * The District Court's conclusion that appellants were entitled to compensation in this Honda litigation only for the services which they rendered during the administrative stage seems reasonable to us. The memoranda opinions note that appellants and their associates provided many important services in the administrative proceedings: Appellants, among other things (1) obtained an extension of time which allowed many claims to be filed which would otherwise have been barred, and (2) successfully opposed legislation which would have prevented recovery by any claimants. Although as a general rule the legal fees for administrative stage services are not ordinarily thought of as governed by class-action principles, we do not think the trial court in this case erred by exercising his equitable powers to allow such a fee here. Most significant to us is the fact that by a stipulation entered into by the Office of Alien Property in 1953 appellant Carolan and his associates were allowed to contest before the agency on behalf of all claimants-- including those who are now the Honda claimants-- the issue of whether the yen certificates were to be converted into dollars at the pre-war as opposed to the post-war conversion rate. The Supreme Court noted that the named claimant in this protracted administrative proceeding was 'acting for all yen certificate holders,' Honda v. Clark, 386 U.S. 484, 488, 87 S.Ct. 1188, 1190 (1967), and the Government in its brief before us admits that this conversion rate issue 'in the administrative proceedings was one in which all the claimants against the Yokohama Specie Bank and the Sumitomo Bank who were holders of yen certificates of deposit were equally concerned and equally involved.' (Brief at 36;)
 
 
 7
 The Government nonetheless argues that this is not enough to justify compensation because (1) appellants were not successful before the agency, and (2) apart from the conversion issue, there were other issues which had to be resolved before Honda claimants could possibly collect. But the mere fact that the administrative determination was not at first favorable to any of the claimants does not affect the fact that appellants performed an obvious service for both the Abe-Aratani and the Honda claimants by building the administrative record upon which each was later to succeed. Furthermore, the fact that there were issues apart from the conversion rate which had to be resolved before payment to Honda claimants was possible in no way denigrates the importance for Honda claimants of the administrative effort on the conversion issues. In these circumstances, we cannot say that the trial court erred in the exercise of his equitable powers or acted in any way contrary to the standards of 50 U.S.C.A. App. 20 (1964) by awarding counsel fees for the administrative services.
 
 
 8
 As to appellants' claim to be compensated for their services in the Abe-Aratani litigation, we are unable to say that the trial court's denial was erroneous. Appellants say, first, that the Abe-Aratani litigation was subsequently interpreted by the Supreme Court as having tolled the statute of limitations for the Honda claimants. Second, they assert that their settlement at the pre-war conversion rate in effect 'fixed the rate of recovery' for the Honda claimants.
 
 
 9
 The District Court pointed out, with respect to the former, that (a) there was no evidence that at the time appellants filed the Abe suit they had as one of their purposes the tolling of the statute of limitations for the Honda claimants; and that (b) it is not clear that appellants had reason to believe at the time the suit was filed that the Honda claims were recoverable. It rejected the second argument on the grounds that (a) the Abe litigation created no fund for the Honda claimants; (b) the conversion rate at which the Abe litigation was settled was not, strictly speaking, even stare decisis for the subsequent Honda suit-- 'the most that can be said is that Honda plaintiffs sought and obtained a consent judgment at an exchange rate that had been applied in the approved Abe consent judgment.' These dispositions appear to us to be supported by both fact and reason, and they do not conflict with any authority known to us in this field.[5]
 
 II
 
 10
 Appellants express concern that the formula by which compensation is to be governed could conceivably be interpreted to diminish in an irrational and arbitrary way the amount which they eventually receive. Because the trial court's order rather clearly contemplates the necessity for further proceedings, possibly before a special master, in order to fix the amounts of compensation, we do not think this the time for a definitive determination as to the correctness of the formula. Instead, we simply identify some of the considerations which should be kept in mind when the amount of the specific fee is set.
 
 
 11
 A. What Lawyers Are Eligible To Claim a Fee for Services Performed During the Administrative Stage?
 
 
 12
 The District Court's orders contemplate that, apart from appellants and their associates, other lawyers who participated in the administrative proceeding might also be eligible to assert a claim for a fee. The second order requested that the Government ascertain 'from the records and files of the Office of Alien Property of the Department of Justice all counsel who participated in this case at the administrative level on behalf of claimants coming within the Honda class * * *.' After notice was sent to these lawyers, those who wished to 'assert a claim for services during the administrative stage were to file a claim on or before October 1, 1968 * * *.' The court further indicated that after all the claims were submitted, the Court might, if it thought it necessary, refer these claims to a special master, presumably to determine how to allocate the fees among the claimants. The order itself does not make clear, however, the test by which the court or special master would determine what types of services at the administrative level entitled a lawyer to share in the fee. Although the trial court at one point mentioned the fact that appellants filed a large number of claims, we doubt that it intended that a lawyer is entitled to share in the fee simply because during the administrative period he filed a claim for his own client. Merely filing for one's own client does nothing to benefit the 'class' of Honda claimants. On the other hand, any lawyer who performed services which can be viewed as having benefitted the Honda claimants as a group-- e.g., lawyers who helped defeat harmful legislation, or secured extensions of filing deadlines, or participated in the contest over the appropriate conversion rate-- might well be thought deserving of participation in the fee, irrespective of whether they were associated with appellants.
 
 
 13
 B. The Amount of the Fee.
 
 
 14
 In its second order the District Court wrote:
 
 
 15
 The total amount to be paid on said claims of counsel shall not exceed 5% Of the total amount paid on the claims of the Honda class claimants who have not heretofore given powers of attorneys to counsel or have not otherwise retained or contracted for legal services of counsel.
 
 
 16
 It appears that the District Court wished the total fee for administrative stage services to equal up to five percent[6] of a fund equal to the total claims paid less the claims paid to those who had retained counsel. It is not altogether clear, however, which claims should be excluded from the total recoveries in order to make up the fund to which the percentage rate is to be applied. Appellants fear that exclusion might encompass either
 
 
 17
 (a) those recoveries of all claimants represented by any counsel at any time before April 30, 1968; or
 
 
 18
 (b) those recoveries of claimants who were represented by any lawyer during the pendency of the administrative proceedings, irrespective of whether that lawyer performed any administrative stage service which benefitted the class of Honda claimants.
 
 
 19
 Although the literal words of the District Court's order might be construed in either of these ways, we doubt that this is what was intended. During oral argument before us, the Government appeared to concede that it would make no sense to adopt interpretation (a)-- the fact a claimant retained counsel after the administrative proceedings were over, in 1963 for example, should have no effect on the fee for services paid to appellants and others for services rendered during the administrative period. We likewise doubt that the court intended interpretation (b), for it also seems irrational to reduce the fee for those who performed services which benefitted the class simply because a claimant was represented by some other counsel at some time between 1946 and 1961. We infer that what the trial court intended was to make sure that those lawyers who were eligible for a fee under its award were not in effect paid twice by the same claimant-- once by a retainer or other private fee arrangement, and a second time from a fee paid out of the remainder of the fund.
 
 
 20
 The fee recovered by a lawyer making a valid claim for services rendered during the administrative stage presumably should (1) be proportional to the total administrative stage services benefitting the class which he performed; and (2) be adjusted to reflect the fact that he is already being compensated by those Honda claimants otherwise represented by him. These are, in any event, among those questions best addressed to the trial court in the first instance, or to any master who may be appointed to consider and establish a basis for payment for the claims actually filed in response to the District Court's action, now upheld by us.
 
 
 21
 Affirmed.
 
 
 
 [1]
 The long and very complicated series of disputes between the various groups of depositors and the Alien Property Custodian is described at length in Honda v. Clark, 386 U.S. 484, 87 S.Ct. 1188, 18 L.Ed.2d 244 (1967), as well as in a memorandum of the trial court accompanying the judgment appealed from in this instance. 276 F.Supp. 154 (D.D.C.1967)
 
 
 [2]
 Aratani v. Kennedy, 115 U.S.App.D.C. 97, 317 F.2d 161, reh. den., 115 U.S.App.D.C. 97, 101, 323 F.2d 427 (1963), cert. granted 375 U.S. 877, 84 S.Ct. 147, 11 L.Ed.2d 110 (1963), compromise settlement approved, 228 F.Supp. 706 (1964), petition for cert. dismissed, 380 U.S. 938, 85 S.Ct. 951, 13 L.Ed.2d 826 (1965)
 
 
 [3]
 386 U.S. at 494, 87 S.Ct. at 1193. If interest is included, the settlement amounts to about one-half the maximum amount which would have been paid to the Yokohama Specie Bank claimants at the prewar exchange rate. From the recovery paid, which was about eighty-five times the amount allowed by the Officer of Alien Property, appellants and their associates received counsel fees equal to twenty percent. The settlement was judicially approved in Aratani v. Kennedy, 228 F.Supp. 706 (D.D.C.1964)
 
 
 [4]
 Appellants asked that their fee be paid out of the residue of the assets of the Yokohama Bank after the full payment to all Honda claimants so that their fee would not in any way affect the amount received by the individual Honda claimants. This the trial court did by providing that appellant's fee was to be paid only after recovery by the Honda claimants at the pre-war conversion rate of $0.26 per yen, and after the payment of counsel fees to the Lawyers who conducted the Honda litigation
 
 
 [5]
 Appellants rely in particular on Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157 (1882); Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939), and Wallace v. Fiske, 80 F.2d 897 (8th Cir. 1935). Nothing in those opinions indicates that the District Court was required on the facts present here to exercise its equitable power and award appellants a fee for their Abe services. As the Supreme Court noted in Sprague, supra, 'As in much else that pertains to equitable jurisdiction, individualization in the exercise of a discretionary power will alone retain equity as a living system and save it from sterility.' 307 U.S. at 167, 59 S.Ct. at 780. The Court further indicated in Sprague that courts should exercise this power to impose fees 'only in exceptional cases and for dominating reasons of justice.' Id. Although there can be no doubt that the task of the Honda lawyers was made much simpler by dint of the work done by appellants in the Abe litigation, appellants' 'perhaps inevitable personal sense of injury is not to be equated with a legal right to redress.' Schleit v. BOAC, 133 U.S.App.D.C. 273, 410 F.2d 261 (1969)
 
 
 [6]
 Although the first order set the percentage at a 5% Rate, the second order indicates that the fee 'shall not exceed 5%.' It may well be that, after all the claims are in and the trial court has a better notion of the absolute magnitude of fees already recovered by appellants and other lawyers making valid claims for administrative stage services, the trial court in its discretion may wish to use a lower percentage than 5%